In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2263

JUDY LYNN PRATER,

*Plaintiff-Appellant,*

*v.*

ANDREW M. SAUL,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:18-cv-00204-WCL-SLC — **William C. Lee**, *Judge.*

ARGUED DECEMBER 17, 2019 — DECIDED JANUARY 15, 2020

Before RIPPLE, SYKES, and ST. EVE, *Circuit Judges.*

PER CURIAM. Judy Prater applied for Social Security Disability Insurance Benefits based on a variety of mental and physical impairments. An administrative law judge denied her application on the ground that her residual functional capacity ("RFC") allows her to perform limited sedentary work, and the district court affirmed. On appeal, Ms. Prater argues only that the RFC assessment is too vague about her

need to alternate between sitting and standing. However, because the sit/stand limitation in the RFC assessment specifies that Ms. Prater may change positions as needed so long as she remains in position for at least thirty minutes at a time, we affirm the judgment of the district court.

## I.

## BACKGROUND

### A.

Ms. Prater applied for benefits in 2015, alleging a disability onset date in April of that year. At the time of the administrative law judge's ("ALJ") decision two years later, Ms. Prater was a forty-seven-year-old woman who weighed about 400 pounds and stood five feet, four inches tall, which her doctor diagnosed as "morbid obesity." A.R. at 672. X-rays from 2015 showed that she suffered from mild to moderate degenerative joint disease in her feet and knees and mild to moderate degenerative disc disease in her spine. She was also diabetic and had a history of gout, which she treated with prescribed medication. On her application, Ms. Prater stated that at her last job she experienced pain and fatigue "all the time." A.R. at 220. She reported these symptoms to her doctors, but her examinations revealed generally normal findings despite her many diagnoses. None of her treating physicians offered an opinion that she must alternate between sitting and standing with any particular frequency, or at all.

As part of the benefits application process, several state-agency physicians submitted reports about Ms. Prater's difficulties with standing or sitting for extended periods. She reported to Dr. H. M. Bacchus that she could sit for thirty to

sixty minutes and stand for twenty minutes, and Dr. Bacchus concluded after an examination that Ms. Prater "appear[ed] to have limitations in regard[] to prolonged standing." A.R. at 456. Based on a review of the medical records, Dr. J. V. Corcoran opined that Ms. Prater could stand for a total of two hours and sit for a total of six hours in an eight-hour workday with normal breaks. Dr. Jerry Smartt also reviewed the medical records and agreed with Dr. Corcoran's assessment.

## B.

### 1.

After her application was denied, Ms. Prater requested a hearing before an ALJ. Ms. Prater testified that at her last job working in a factory, after about an hour she would lose her breath, and her feet, legs, and back would start to hurt. After she stopped working, she experienced about the same level of pain in her back and legs. The pain in her feet, however, worsened. When she was on her feet for more than twenty minutes, Ms. Prater said, the pain in all three areas would increase. She testified that, because of the pain, she could either stand or sit for only twenty minutes at a time.

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE about the availability of work for a hypothetical individual with the same vocational background, education, and age as Ms. Prater, who was limited to sedentary work with various restrictions on lifting, carrying, climbing, driving, and more. Further, this person could "stand and walk no more than two hours of an eight-hour day [and] remain seated for the rest of the day." A.R. at 72. The person also "would need to change positions in the

course of the day" but "could remain in place for at least thirty minutes," "whether it's sitting or standing." *Id.* The VE answered that such a person could not do any of Ms. Prater's past jobs but could perform other jobs that are available in the national economy. It would not be "acceptable in competitive employment," however, for someone to need to alternate positions after only twenty minutes. A.R. at 75. Ms. Prater, who was represented by an attorney, did not object to the ALJ's questions or the VE's responses, nor did she ask the VE any questions.

After considering all the evidence, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520 and concluded that Ms. Prater was not disabled. The ALJ found that Ms. Prater had multiple severe impairments, including degenerative joint disease of the feet and knees, degenerative disc disease of the spine, and obesity, but that none met or equaled a listing for presumptive disability. Although she could not perform any of her past jobs as a result of her impairments, she had the residual functional capacity to perform sedentary work with numerous restrictions. Among them, "she requires the ability to change positions as needed, while remaining in each position at least 30 minutes." A.R. at 20. Ms. Prater's impairments could be expected to produce her described symptoms, the ALJ explained, but her statements about their intensity, persistence, and limiting effects were "not entirely consistent" with the evidence. A.R. at 22. For example, the ALJ explained that, although Ms. Prater was morbidly obese, "her physical examination was otherwise unremarkable." *Id.* The ALJ also noted that Ms. Prater had experienced only "mild to moderate" degenerative changes in her feet, legs, and back. *Id.* Finally, the ALJ gave "significant weight" to the opinions of

Dr. Corcoran and Dr. Smartt that Ms. Prater was capable of performing sedentary work with occasional postural restrictions "because they are consistent with the record as a whole." *Id.* at 19. Relying on the VE's testimony, the ALJ then concluded that Ms. Prater is not disabled because she is capable of working as an address clerk, a document preparer, or a surveillance monitor. Ms. Prater later asked the Appeals Council to review the ALJ's decision, but it denied her request.

## 2.

Ms. Prater filed this action in the district court in July 2018, seeking judicial review of the ALJ's determination under 42 U.S.C. § 405(g). She argued that the sit/stand limitation in the RFC formulation was impermissibly vague. The district court rejected Ms. Prater's argument and ruled that substantial evidence supported the ALJ's decision.

## II.

## DISCUSSION

## A.

Because the Appeals Council denied Ms. Prater's request for review, the ALJ's decision is the final decision of the Commissioner of Social Security. *See Burmester v. Berryhill*, 920 F.3d 507, 509–10 (7th Cir. 2019). We will affirm a decision on disability benefits if the ALJ applied the correct legal standards in conformity with the agency's rulings and regulations and the conclusion is supported by substantial evidence. 42 U.S.C. § 405(g); *Burmester*, 920 F.3d at 510. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

sion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks omitted) (citation omitted).

**B.**

On appeal, Ms. Prater argues only that the sit/stand limitation in the RFC finding is too vague to support the ALJ's conclusion that she can work. When a claimant's impairments require switching between positions during a workday, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Ms. Prater contends that the ALJ was unclear about whether she needs to be able to alternate between sitting and standing at will or whether she requires the option to switch positions only every thirty minutes.

Ms. Prater strains to read into the RFC formulation ambiguity that is not there. She primarily relies on *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012), in which the ALJ stated simply that the claimant needed to alternate between sitting and standing "throughout the workday." This restriction was too imprecise because it failed to "specify a particular frequency, and [did] not require that Arnett be able to choose to sit or stand when she feels it is necessary." *Id.* By contrast, Ms. Prater's RFC assessment provides that she must be permitted to alternate between sitting and standing "as needed," which, as Ms. Prater concedes, means "at the will or control of the employee." Appellant's Br. 20. Accordingly, the RFC assessment "pass[es] muster." *Id.*; *see Arnett*, 676 F.3d at 593.

Moreover, and contrary to Ms. Prater's argument, layering a frequency limitation onto the "as needed" posi-

tion-change requirement does not make the "hybrid" restriction ambiguous. As the ALJ's colloquy with the VE illustrates, the thirty-minute constraint conveys that the claimant will not be off-task too frequently throughout the day to preclude competitive employment. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Essentially, it places an outer limit on Ms. Prater's need to change positions and expresses her ability to do work-related activities on a sustained basis despite her impairments. *See* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The time limit does not introduce ambiguity. Therefore, the ALJ permissibly relied on the VE's testimony that someone who must alternate positions at will, but not more than every thirty minutes, can maintain employment. *See Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019).

Critically, Ms. Prater does not argue that the ALJ's finding that she could both sit and stand for thirty minutes at a time lacks medical support, or that the ALJ improperly discredited her testimony that she could remain in each position for only twenty minutes. Nor does she assert—let alone cite evidence to show—that she requires a more restrictive RFC formulation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Because the RFC assessment adequately specified Ms. Prater's sit/stand limitations, her one argument on appeal fails.

## Conclusion

We conclude that the ALJ's RFC formulation is not vague and that the decision is supported by substantial evidence. Therefore, we affirm the judgment of the district court.

AFFIRMED