**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2021
Decided August 17, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3207

| | |
|---|---|
| KAITLYN G. PATE,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Northern District of Indiana,<br>South Bend Division. |
| *v.* | No. 3:19-CV-461-HAB |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br>    *Defendant-Appellee*. | Holly A. Brady,<br>*Judge*. |

**O R D E R**

Kaitlyn Pate, who has numerous mental and physical impairments, challenges the denial of her application for supplemental security income. She argues that when determining her capacity to perform work-related tasks, an administrative law judge ("ALJ") insufficiently accounted for her limitations in concentration, persistence, or pace. Because substantial evidence supports the ALJ's decision, we affirm.

Pate, now 32, has several mental impairments: major depressive disorder, generalized anxiety disorder, attention-deficit/hyperactivity disorder, and learning

disorders. In April 2016 she applied for supplemental security income, arguing that these impairments, in combination with certain physical impairments, left her disabled and unable to work. (Her physical ailments include a heart condition, previous knee surgery, back pain, and a connective-tissue condition called Ehlers-Danlos syndrome. But she raises no argument on appeal about her physical impairments, so we do not address them further.)

Pate has experienced symptoms of depression since adolescence and taken medication since at least 2010. In early 2015 her symptoms worsened, and she began seeing Dr. Sajiv John, a psychiatrist. She reported a "down mood, poor attention and concentration, and anxiety symptoms." Dr. John noted that Pate's attention and concentration were "[a]roused and well sustained," but he recommended that her medication dosage be increased.

Pate continued to see Dr. John every couple of months over the next year. At the initial follow-up, she said that she was more attentive and her mood more stable, and Dr. John noted that her mood had "clearly improved." Over the next visits, Pate's mood ranged from stable to mildly dysphoric during times of stress. But Dr. John consistently assessed her attention and concentration as "[a]roused and well sustained" and her thought process as "[l]ogical and goal directed."

In August 2015 Pate underwent a mental-status examination in connection with an application for disability benefits. She was examined by Dr. Nancy Link, a consultative psychologist who assesses major-depressive disorder and attention-deficit/hyperactivity disorder, and Dr. Link opined that Pate's ability to work was moderately impaired.

As part of her application for supplemental security income filed in April 2016, Pate's records were reviewed by state-agency psychologist Dr. William Shipley, who opined that Pate's mental impairments caused only moderate limitations to daily living, including moderate difficulty maintaining concentration, persistence, or pace. Dr. Shipley also believed that she appeared capable of performing repetitive, unskilled tasks at work on a sustained basis. Three months later another state-agency psychologist concurred with Dr. Shipley's opinion.

In early 2018 Dr. John completed a mental assessment regarding Pate's ability to do work-related activities and opined that she should be expected to be off task for at least an hour each workday and to miss four or more days per month. However, he added that Pate could make simple decisions and behave in a stable manner at work while responding appropriately to coworkers and changes in routine.

The Social Security Administration denied Pate's application initially and on reconsideration.

Pate then had a hearing before an ALJ. She principally testified about her physical impairments, though she did say that her depression caused her to disengage from others and that at times she struggled to focus and remember to do things when given too many tasks. She also said that caring for herself and her son was difficult and kept her from seeking work. A vocational expert testified about the availability of light work for someone with Pate's background and physical limitations who was "limited to performing simple, routine and repetitive tasks, and limited to making simple work-related decisions." The expert identified available jobs, including electronics worker, garment sorter, mailroom clerk, as well as telephone-quotation clerk, call-out operator, and charge-account clerk if sedentary. The expert added that those jobs would allow Pate to be off task no more than 10% of the workday and tardy no more than once during a 60- to 90-day period.

The ALJ determined that Pate was not disabled. He found that she had not engaged in substantial gainful activity since the alleged onset date (Step 1) and that she had severe physical and mental impairments (Step 2). But none of the impairments met or equaled a listed impairment (Step 3). Further, Pate retained the residual functional capacity ("RFC") to perform light work involving simple, routine tasks that did not involve certain physical limitations or decision-making beyond simple work-related matters (Step 4). Finally, the ALJ determined that the jobs identified by the vocational expert were available to someone with Pate's limitations (Step 5).

In reaching his decision, the ALJ gave great weight to the opinions of the two state-agency psychologists, whose opinions he found consistent with Dr. John's observations and the clinical evidence that Pate consistently sustained attention and concentration. The ALJ also gave great weight to Dr. John's findings that Pate could make simple work-related decisions and respond appropriately to conditions in the workplace—findings that the ALJ deemed consistent with the record and Dr. Link's consultative examination. But the ALJ gave only partial weight to Dr. John's opinion concerning Pate's absences and ability to work consistently throughout the day, an opinion that the ALJ did not believe was supported by the clinical evidence or Pate's own testimony that she could drive, care for her son, and cook. The Appeals Council then denied Pate's request for review. The district court upheld the denial of benefits.

We will uphold the denial of benefits if the ALJ's decision is supported by substantial evidence, *see* 42 U.S.C. § 405(g), meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

On appeal Pate argues that the ALJ's assessment of her RFC did not properly account for limitations in concentration, persistence, or pace because it failed to incorporate her limited ability to stay on task. She points to two statements from

Dr. John's 2018 mental assessment that in her view confirm that she cannot work on a sustained basis. Dr. John indicated, first, that Pate would be off task for at least one hour each day and that she would miss at least four days per month and, second, that Pate could only partially maintain attention and concentration.

But the ALJ permissibly discounted Dr. John's statements. As for the first statement, the ALJ appropriately explained that he gave it little weight because it was unsupported and inconsistent with Dr. John's clinical findings and the findings of other psychologists. The ALJ did not address the second statement regarding Pate's limited attention and concentration, but an ALJ need not mention every piece of evidence, particularly when, as here, the statement was conclusory, unsupported, and contradicted by Dr. John's clinical findings about her well-sustained attention and concentration. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam). And because Pate has not identified any other evidence of an inability to work continuously, the ALJ was right not to include this additional limitation in the RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (per curiam).

Pate also relies on *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), in which we stated that a limitation to "simple and repetitive tasks"—as the ALJ introduced here—"says nothing about whether the individual can [perform those tasks] on a sustained basis." In *Crump* we vacated the denial of benefits because the ALJ's RFC assessment ignored evidence of the claimant's limitations in working at a sustained pace. Here, however, Pate did not identify evidence that suggested an inability to perform simple tasks on a sustained basis. Indeed, only Dr. John—whose opinion the ALJ permissibly rejected—opined that she could not do so.

AFFIRMED